UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

JAMES LYONS,                                    CASE NO.: 1:12-cv-324

        Plaintiff,                            Judge Michael R. Barrett

  v.

DR. TIMOTHY HEYD, M.D. et al.,

        Defendants.

## OPINION AND ORDER

This matter is before the Court on Defendants' Motion for Judgment on the Pleadings, or in the Alternative, Motion for Summary Judgment. (Doc. 32). Plaintiff has filed a response in opposition (Doc. 37), and Defendants have filed a reply (Doc. 38). This matter is now ripe for review.

## I.    BACKGROUND

### A.    Overview of Claims

Plaintiff James Lyons, an inmate incarcerated at the Lebanon Correctional Institution ("LeCI"), has filed a civil rights after against Defendant Timothy Heyd, M.D., the Medical Director at LeCI at the time, and Dr. Andrew Eddy, the State Medical Director for the Ohio Department of Rehabilitation and Correction ("ODRC"). The Defendants are sued in their official capacities.

Plaintiff claims Defendants acted with deliberate indifference to his serious medical need for medical treatment for his pain associated with sickle cell anemia, and that Defendants enforced a policy prohibiting the administration of narcotics medication in the prison facility, which resulted in deliberate indifference to his medical needs. He requests compensatory and

punitive damages, and also asks the Court to enjoin Defendants from withholding sufficient and medically necessary pain medication. Finally, he requests an award of attorneys' fees and costs.

B.    **The Parties' Arguments**

1.    **Defendants' motion**

Defendants have moved for judgment on the pleadings, or in the alternative, summary judgment on several grounds. First, Defendants contend that a claim against them in their official capacities under 42 U.S.C. § 1983 must be based on a "policy or custom" that caused the claimed constitutional violation. According to Defendants, Plaintiff's factual allegations fail to sufficiently allege such a policy or custom. In addition, Plaintiff attaches an affidavit of Dr. Eddy to support its argument that ODRC does not have a policy prohibiting the prescribing of opiate medications in prison facilities.

Second, Defendants argue that his Eighth Amendment medical deliberate indifference claim fails to state a plausible claim for relief. Defendants cite to several cases that they contend support their position. They contend that Plaintiff's claims are based on his dissatisfaction with the pain medications prescribed, which fails to rise to the level of cruel and unusual punishment under the Eighth Amendment.

2.    **Plaintiff's response in opposition**

While conceding that he brings his claims against Defendants in only their official capacities, Plaintiff responds that his allegations and the supporting declaration are sufficient to state a claim for relief. With respect to the official policy and custom, he argues that his Complaint alleges Dr. Eddy is responsible for developing medical policies and protocols at ODRC and that Dr. Eddy refuses to approve administration of narcotic pain medication on-site at the prison facility. In further support, Plaintiff refers to the affidavit of Mr. Singleton, recounting

2

that instances where Defendants or their counsel have represented that narcotic medication was not permitted to be administered at LeCI for security reasons.

As for the Eighth Amendment deliberate indifference standard, Plaintiff argues that he has satisfied the requisite elements because he alleges that his pain from sickle cell anemia is nearly constant and excruciating, and that Plaintiff's pain medication was removed completely by Dr. Heyd to punish him for "cheeking" and not for legitimate medical reasons. Plaintiff claims that the cases relied upon by Defendants are distinguishable.

### 3. **Defendants' reply**

In the reply, Defendants again argue that Plaintiff's allegations and claims are insufficient. Defendants contend that the allegations are conclusory, and that Plaintiff alleges only denial of certain medications to him by Defendants rather than a policy or custom of ODRC physicians in denying inmates pain medication. Defendants further reference Dr. Eddy's affidavit indicating that the ODRC protocol cautions against the use of narcotics, but permits its use when appropriate. They cite to Plaintiff's medical records in an ODRC facility showing he received narcotic pain medication in March 2011 (that is, Tylenol with Codeine). Defendants further allege that Plaintiff received Ultram (Tramadol) while at LeCI, which is a "synthetic opioid," which shows that he received narcotics while at LeCI, and that he was transported to hospitals on two separate occasions for the treatment of acute sickle cell crises. They further contend that Dr. Heyd was only one of many ODRC physicians who treated Plaintiff and that the actions are the result of independent physician decisions rather than ODRC policy or custom.

## II. **STANDARDS OF REVIEW**

Defendants move for dismissal of Plaintiff's claims under Fed. R. Civ. 12(c), or in the alternative, Fed. R. Civ. P. 56.

### A. **Rule 12(c)**

A motion for judgment on the pleadings under Rule 12(c) is analyzed using the same standards applicable to a motion to dismiss under Fed. R. Civ. P. 12(b)(6). *Tucker v. Middleburg-Legacy Place, LLC*, 539 F.3d 545, 549 (6th Cir. 2008) (citing *Sensations, Inc. v. City of Grand Rapids*, 526 F.3d 291, 295 (6th Cir. 2008)). As such, this Court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008) (quoting *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007)). "[T]o survive a motion to dismiss[,] a complaint must contain (1) 'enough facts to state a claim to relief that is plausible,' (2) more than 'a formulaic recitation of a cause of action's elements,' and (3) allegations that suggest a 'right to relief above a speculative level.'" *Tackett v. M&G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 1965, 1974, 167 L. Ed. 2d 929 (2007)). A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Ashcroft v. Iqbal*, 556 U.S. 662, 663, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009). Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556).

### B. **Rule 56**

Where materials outside the pleadings are offered to accompany a motion to dismiss, the Court has two options. *Cincinnati Ins. Co. v. Hertz Corp.*, 776 F. Supp. 1235, 1238 (S.D. Ohio 1991) (citing *Carter v. Stanton*, 405 U.S. 669, 671 (1972)). First, the Court may exclude the additional material and decide the motion based upon the complaint alone. *Id.* (citing

*Coughlin*, 922 F.2d 152, 154 (2nd Cir.1991)); *see also* Fed. R. Civ. P. 12(d). Second, the Court may treat the motion to dismiss as a motion for summary judgment and rule upon the motion as provided in Rule 56. *Id.* (citing *Carter*, 405 U.S. at 671; *Rose v. Bartle*, 871 F.2d 331, 340 (3rd Cir.1989)). If matters outside the complaint are considered by the Court in ruling on a motion to dismiss, then the motion must be considered as a motion for summary judgment. *Id.* (citing *Sims v. Mercy Hospital of Monroe*, 451 F.2d 171 (6th Cir.1971)). When the Court converts a motion to dismiss into a motion for summary judgment, it must provide all parties with a "reasonable opportunity to present all material that is pertinent to its motion." Fed. R. Civ. P. 12(d).

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is "genuine" when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is "material" only if its resolution affects the outcome of the suit. *Id.*

In determining whether summary judgment is appropriate, a court must view the evidence and draw all reasonable inferences in favor of the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The moving party has the burden of showing an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett,* 477 U.S. 317, 325 (1986).

Once the moving party has met its burden of production, the nonmoving party cannot rest on his pleadings, but must present significant probative evidence in support of his complaint to defeat the motion for summary judgment. *Anderson*, 477 U.S. at 249. "The mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmoving party]." *Id.* at

252.  Entry of summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Celotex*, 477 U.S. at 322.

## III.  ANALYSIS

The parties agree that Plaintiff brings his § 1983 claims against Defendants in their official capacities only.  When a defendant-official is sued only in his official capacity, the suit should be construed as a suit against the governmental entity.  *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 68 (1989); *Fox v. Van Oosterum*, 176 F.3d 342, 347-48 (6th Cir. 1999). When a § 1983 claim is made against a governmental entity, the Court must consider:  (1) whether plaintiff's harm was caused by a constitutional violation, and (2) whether the governmental entity is responsible for that violation.  Consistent with the parties' briefings, the Court will address these issues in reverse order.

### A.  Policy or Custom

A governmental entity cannot be held liable for an injury inflicted solely by its employees or agents unless there is a direct causal link between a policy or custom of the entity and the alleged constitutional violation.  *Bd. of the County Comm'rs v. Brown*, 520 U.S. 397, 404 (1997); *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978); *Cummings v. City of Akron*, 418 F.3d 676, 684 (6th Cir. 2005).  In other words, the plaintiff must "show[] that the unconstitutional policy or custom existed, that the policy or custom was connected to the governmental entity, and that the policy or custom caused the constitutional violation.  *Napier v. Madison County*, 238 F.3d 739, 743 (6th Cir. 2001); *see also Cash v. Hamilton County Dep't of Adult Prob.*, 388 F.3d 539, 543 (6th Cir. 2004).  Accordingly, the link between the policy and the alleged constitutional

violation must show that the government's deliberate conduct can be deemed the "moving force" behind the violation.  *Graham v. County of Washtenaw*, 358 F.3d 377, 383 (6th Cir 2004).

Upon review, the Court finds that Plaintiff has met his burden of showing a policy or custom of the municipality of not permitting inmates to receive narcotics for any medical condition while at LeCI.  In the Amended Complaint, Plaintiff alleges that Dr. Heyd was the Medical Director of LeCI and was responsible for Plaintiff's medical care while Dr. Eddy was the Chief Medical Officer of the ODRC, was responsible for Plaintiff's medical care, and developed the medical policies and protocols for all of the healthcare providers employed by the ODRC.  He alleges that both Defendants refused to provide Plaintiff with adequate pain management, denied Plaintiff opioid pain medications at LeCI despite having received them while in the Hamilton County Justice Center, approved of and provided only non-opioid medications that did not manage his pain or his sickle cell crises, and refused to administer opioid therapy on-site during a sickle cell crisis and require him to be transferred off-site for such medication when in a sickle cell crisis.  Construing those facts in the light most favorable to Plaintiff, it is plausible that it is a policy or custom of ODRC and/or LeCI to not provide opiate medications on-site to inmates regardless of their level of pain, and to require transportation to an off-site facility to administer opiate medications.

Even if the Court were to consider the motion as one for summary judgment, there still would be a genuine issue of material fact as to whether such a policy or custom existed. Although Defendants have presented evidence that the ODRC's formal policy does not necessarily prohibit narcotics in all ODRC facilities, Plaintiff has presented evidence that is sufficient to create a genuine issue of material fact as to whether a policy or custom existed in regards to LeCI specifically.  Indeed, no evidence presented by Defendants precludes a finding

7

of municipal liability that arises from ratification of a decision by a policymaker or from an act performed pursuant to a custom.  *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988); *Monell*, 436 U.S. at 694; *Shorts v. Bartholomew*, 255 F. App'x 46, 57 (6th Cir. 2007); *Meyers v. City of Cincinnati*, 14 F.3d 1115, 1117-18 (6th Cir. 1994).  As such, summary judgment is not warranted at this time.

As for the denial of effective medications due to "cheeking," the Court finds it plausible that there exists a custom or policy attributable to the municipality.  While a single act of Dr. Heyd would be insufficient since *respondeat superior* does not apply in § 1983 lawsuits, *Brown*, 520 U.S. at 402 and *Monell*, 436 U.S. at 691, the allegations as to Dr. Heyd's conduct raise a plausible inference that there is a custom or policy of denying inmates prescribed and necessary medications due to cheeking which resulted in the denial of adequate pain management for Plaintiff's chronic pain caused by his sickle cell anemia.  Further, given that no evidence has been presented by Defendants on this particular issue, summary judgment also is not warranted at this time.

### B. <u>Constitutional Violation</u>

Plaintiff's claim for denial of medical care conflates three separate theories, which the Court parses out here.  The first theory is that Defendants denied Plaintiff adequate medical care by refusing to provide him opiates for his daily chronic pain.  The second theory is that Defendants denied Plaintiff adequate medical care by refusing to administer opiates to Plaintiff on-site during a sickle cell crisis, requiring him instead to be transported to a hospital to receive the opiate medication.  The third theory is that Dr. Heyd denied Plaintiff adequate medical care by denying Plaintiff the only mildly effective medication of Ultram after a "cheeking" incident, providing instead only non-effective Indocin and Iburprofen.

8

To state a colorable claim under § 1983 against Defendants, Plaintiff "must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs" in violation of the Eighth Amendment.  *Estelle v. Gamble*, 429 U.S. 97, 106 (1976).  Proof of deliberate indifference under the Eighth Amendment includes separate objective and subjective components.  *Weaver v. Shadoan*, 340 F.3d 398, 410 (6th Cir. 2003).

### 1. __Objective component__

The objective component requires that the medical need be "sufficiently serious."  *Wilson v. Seiter*, 501 U.S. 294, 298 (1991); *Talal v. White*, 403 F.3d 423, 426 (6th Cir. 2005).  A medical need is sufficiently serious when it is so obvious that a lay person would easily recognize the necessity for a doctor's attention.  *Harris v. City of* Circleville, 583 F.3d 356, 368 (6th Cir. 2009). The objective component is contextually driven and is responsive to "'contemporary standards of decency.'"  *Hudson v. McMillian*, 503 U.S. 1, 8 (1992) (quoting *Estelle v. Gamble*, 429 U.S. 97, 103 (1976)).

Here, Plaintiff has alleged sufficient facts to plausibly show that his medical needs for sickle cell anemia were sufficiently serious.  He has alleged that he experiences constant excruciating chronic pain as a result of sickle cell anemia that limits his daily activity.  He further has alleged that when he experiences a sickle cell crises, he feels like his "bones are being crushed."  Not only was the condition diagnosed and in need of treatment, but an ordinary lay person also would easily recognize the necessity of a doctor's attention to treat his daily chronic pain from sickle cell anemia as well as his pain from a sickle cell crisis.  Dismissal therefore is not appropriate on this basis.

### 2. __Subjective component__

As for the subjective component, Plaintiff must show that the prison officials had "a sufficiently culpable state of mind." *Farmer*, 511 U.S. at 834.  A "sufficiently culpable state of mind" is one in which "the official knows of and disregards an excessive risk to inmate health or safety." *Id.* at 837.  It entails something more than mere negligence but can be satisfied by something less than acts or omissions for the very purpose of causing harm or without knowledge that harm will result.  *Id*. at 835.  Instead, the official must be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, he must actually draw the inference, and he must disregard the risk.  *Id* at 837.; *see also Clark-Murphy v. Foreback*, 439 F.3d 280, 286 (6th Cir. 2006).

The first theory focuses on Plaintiff's chronic pain.  Plaintiff's allegations are sufficient to plausibly show that Defendants were aware of Plaintiff's chronic pain from sickle cell anemia, and that they drew the inference that a substantial risk of harm arose from the condition.  Indeed, Plaintiff alleges that his records show he was treated at the Hamilton County Justice Center with opiates for his chronic pain, that ODRC treated his chronic pain with Idocin, Ibuprofen, and Ultram, that Dr. Heyd specifically prescribed Ultram, and that both Defendants were aware that he suffered from excruciating chronic pain.  As for whether Defendants disregarded that risk, Defendants argue that Plaintiff merely disagrees with the prescribed treatment or desired more aggressive treatment which is insufficient to support an Eighth Amendment claim.  While Defendants are correct that a mere disagreement is insufficient, Plaintiff has alleged more than a mere disagreement or desire for more aggressive treatment.  Instead, construing the facts in the light most favorable to Plaintiff, he has alleged that Defendants did not make a reasoned, individualized medical decision as to his medical needs and circumstances in administering non-narcotic medication but instead knew that Plaintiff needed narcotics to appropriately manage his

chronic pain but deliberately refused to provide that treatment because of the policy or custom of not providing inmates narcotics at LeCI. Those allegations differentiate Plaintiff's case from those cases where a mere disagreement existed. *Compare Clutters v. Sexton*, No. 1:05cv223, 2007 U.S. Dist. LEXIS 84025 at *32-33 (S.D. Ohio Nov. 2, 2007) *with Alspaugh v. McConnell*, 643 F.3d 162, 169 (6th Cir. 2011); *Thomas v. Coble*, 55 F. App'x 748, 749 (6th Cir. 2003); *Brown v. Wilson*, No. 6:11-00189, 2012 U.S. Dist. LEXIS 24587, at *9-13 (E.D. Ky. Feb. 27, 2012). As Defendants have not demonstrated a mere disagreement with the recommended treatment at this time, dismissal is inappropriate.

The Court now turns to Plaintiff's second theory, which focuses on his pain during a sickle cell crisis. Plaintiff's allegations as to this theory state a plausible claim for relief under the Eighth Amendment. Plaintiff alleges that Defendants knew of the excrutiating pain he suffered during a sickle cell crisis and that they made the inference that he was suffering from such pain given their knowledge of his condition and sickle cell crises. As for whether they disregarded the risk to Plaintiff, the allegations in the Amended Complaint reflect more than a mere disagreement with Defendants' chosen treatment plan. Similar to his allegations in regards to his chronic pain, Plaintiff allegations, construed in his favor, plausibly show that Defendants failed to make a reasonable, individualized assessment as to his medical needs and instead deliberately refused to provide him with narcotic medications to effectively treat his pain, regardless of his condition. Further, Plaintiff's allegations indicate that he did not receive effective treatment until he endured a long transport to a hospital. Construing the facts in favor of Plaintiff, it is plausible that Defendants did not act reasonably to abate the risk of harm to Plaintiff. While Defendants have presented some facts that may show that Plaintiff was transported to the hospital on several occasions for treatment during an acute sickle cell crisis, it

11

is remains unclear as to the extent of the treatment received prior to or during the transport and whether mere transportation constituted reasonable actions to abate the risk of harm to Plaintiff. Further factual development is necessary before the issue can be resolved.

As for Plaintiff's third theory, he has alleged plausible deliberate indifference by Dr. Heyd when he discontinued Plaintiff's Ultram.  Plaintiff alleges that Dr. Heyd discontinued the Ultram for non-medical reasons, namely, for "cheeking."  Plaintiff alleges that at the time of that action, Dr. Heyd was aware of Plaintiff's chronic pain, was aware that Ultram was at least mildly effective in easing his chronic pain, and was aware that Indocin and Iburprofen were non-effective.  He alleges that Dr. Heyd disregarded that risk by discontinuing the prescription for Ultram, despite it being readily available and despite knowing Plaintiff would suffer pain.  As such, Plaintiff has alleged more than a mere disagreement with Dr. Heyd's chosen course of treatment after a reasonable, individualized assessment of his medical needs.  As the Sixth Circuit has recognized, "a prisoner who is needlessly allowed to suffer pain when relief is readily available does have a cause of action against those whose deliberate indifference is the cause of his suffering." *Westlake v. Lucas*, 537 F.2d 857, 860 (6th Cir. 1976); *see also Scott v. Ambani*, 577 F.3d 642, 648 (6th Cir. 2009).  Moreover, given that Defendants have presented no evidence focused on this particular issue, summary dismissal also is inappropriate at this time.

## IV.  <u>CONCLUSION</u>

For the foregoing reasons, Defendants' Motion for Judgment on the Pleadings, or in the Alternative, Motion for Summary Judgment (Doc. 32) is hereby **DENIED**.

**IT IS SO ORDERED.**

s/Michael R. Barrett
Michael R. Barrett, Judge
United States District Court

12